# IN THE COURT OF APPEALS OF IOWA

No. 24-1586
Filed December 18, 2024

IN THE INTEREST OF N.F. and E.F.,
Minor Children,

J.F., Father,
    Appellant,

D.S., Mother,
    Appellant.
_____

Appeal from the Iowa District Court for Linn County, Carrie K. Bryner, Judge.

A mother and father separately appeal the juvenile court's decision to terminate their parental rights for two children. **AFFIRMED ON BOTH APPEALS.**

Michael M. Lindeman, Cedar Rapids, for appellant father.

Annette F. Martin, Cedar Rapids, for appellant mother.

Brenna Bird, Attorney General, and Tamara Knight, Assistant Attorney General, for appellee State.

Robin L. O'Brien Licht, Cedar Rapids, attorney and guardian ad litem for minor children.

Considered by Tabor, C.J., and Ahlers and Sandy, JJ.

**SANDY, Judge.**

The juvenile court terminated a mother's and father's parental rights to their two children pursuant to Iowa Code section 232.116(1)(f) and (h) (2024). The mother and father separately appeal.

Although the mother and father appeal separately, they make identical claims on appeal. They contend that (1) the statutory grounds for termination were not established and (2) the juvenile court erred in not applying a permissible exception to termination under Iowa Code section 232.116(3).

After our de novo review of the record, we affirm.

## I.  Background Facts and Proceedings

The mother and father were in an on and off relationship from 2017 to 2020. The two were never married, but their relationship produced two daughters—N.F. and E.F. They are the subjects of this appeal. N.F. was born in 2019, and E.F. was born in 2021. It was E.F.'s birth that first brought the family to the attention of the Iowa Department of Health and Human Services (HHS). At birth, E.F. tested positive for methamphetamine. This led to the first child-in-need-of-assistance (CINA) case involving the children. The mother and father both acknowledge they have an extensive history with substance-use issues. The mother has used methamphetamine since she was twenty, and the father has used methamphetamine since he was fifteen.

Following an investigation by HHS after E.F's birth, the State filed a CINA petition with the juvenile court in Black Hawk County. N.F. and E.F. were adjudicated in need of assistance in September 2021 and placed with their paternal grandmother. In April 2022, the juvenile court held a permanency hearing.

However, the juvenile court deferred entering a permanency order and granted the mother a six-month extension because she had recently been admitted to an inpatient treatment facility. The juvenile court warned the mother she was "on her last chance and must work very diligently toward her sobriety and completing the case permanency plan."

The mother made an "exceptional turnaround" after entering the inpatient treatment facility. The mother took her sobriety seriously and complied with all random drug testing requirements. All parties agreed N.F. and E.F. could return to the mother's care and that a bridge order would be appropriate to close the CINA case. In December 2022, that case was closed through a bridge order granting the mother and father joint legal custody of the children. However, the mother was granted physical care.

Following the closure of the first CINA case via a bridge order, the mother moved with the children to an apartment in Cedar Rapids. The mother could not maintain her sobriety following her move. In early April, HHS received reports alleging the mother was under the influence of methamphetamine while caring for the children. HHS went to investigate at the mother's apartment and discovered she had voluntarily placed the children in the care of their paternal grandmother. She admitted to HHS that she had recently relapsed and was in no position to care for the children at the time. The mother later signed a safety plan with HHS, agreeing that the children should remain with their grandmother until further advised by HHS. The mother later completed a substance-use evaluation and was admitted to an inpatient treatment facility. However, she no-showed to her appointment to be admitted to the treatment facility. During this time, the father

was incarcerated at the Mount Pleasant Corrections Facility. The father has been in and out of incarceration for most of the children's lives.

The State subsequently filed a CINA petition on April 20. A hearing on the petition was held a few days later. In its dispositional order, the juvenile court noted the mother and father stipulated that the children were in need of assistance. Based on this stipulation, the children were adjudicated CINA. The juvenile court placed the children in the custody of HHS for purposes of relative placement. The children were placed with their grandmother. The mother was ordered to complete a substance-use and psychological evaluation and comply with any recommendations thereto. She was also ordered to drug test four times per month. Similarly, the father was ordered to complete a substance use evaluation and drug test four times per month.

The mother and father failed to make meaningful progress in addressing their substance use issues. The mother completed a substance-use evaluation in June 2023 and completed extended outpatient treatment. But in November 2023, she showed up to a meeting with her substance-use counselor and disclosed she had relapsed. Her counselor set up an appointment to restart extended outpatient treatment, but the mother showed up to this appointment and stated she could not stop using methamphetamine. She then requested she be referred for inpatient treatment.

The mother was referred to inpatient treatment and was admitted to a treatment facility in Mason City near the end of December 2023. However, after a week of treatment, she was unsuccessfully discharged from the facility after being discovered with a nicotine vape pen. She had been warned by the facility's staff

that being caught with such a device could lead to a premature discharge. During this same time, the mother frequently failed to comply with her court-ordered drug testing requirements. The mother was given fifty-nine opportunities to drug test but only completed twenty-one tests for HHS. She no-showed for thirty-seven tests. Of the twenty-one completed tests, nine tests came back positive for methamphetamine, marijuana, or both. She last tested positive for methamphetamine on February 28, 2024. However, she tested positive for marijuana as recently as March 28.[1]

As for the father, he was released from the Mount Pleasant Correctional Facility in June 2023. Following his release, he took up residence at a halfway house in Waterloo. He initially began drug testing with his parole officer but stopped soon after his release. The father never completed a substance-use evaluation or drug tested for HHS. In September 2023, he sent a text message to an HHS worker telling her he had recently used methamphetamine. He then checked himself into an inpatient treatment facility, but he left after spending only one day at the facility. The father was also evicted from an apartment he had secured in Waterloo due to his continued drug use.

Additionally, during the fall of 2023, a warrant was issued for the father's arrest due to parole violations. The father avoided contact with HHS employees out of fear that he would be arrested if he met with any HHS employee. For the same reason, he did not have any visits with his children while the warrant was

---

[1] The record discloses the mother may have received a medical marijuana card. She did not provide the medical marijuana card to HHS or the juvenile court, but she did provide receipts from a medical marijuana dispensary.

outstanding. In March 2024, the father overdosed on methamphetamine and fentanyl. After receiving treatment at the hospital for his overdose, the father was arrested on his outstanding warrant. However, he was subsequently released and placed in a community-based correctional facility.

After several permanency review hearings, the children were determined to remain in need of assistance, and their placement with the grandmother was ordered to continue. Due to the mother's and father's failure to make progress in addressing their substance-use issues, the State filed a termination petition in February. A termination trial was held in April. During the trial, the juvenile court heard testimony from Taylor Tanner, Nicole Myers, and the father. Tanner is employed as a peer mentor at Families First—a contracted service provider for HHS—and worked extensively with the family on this case. Myers is employed as a social worker with HHS and has worked with the family since October 2023. The mother did not appear or participate at the trial. However, her attorney appeared on her behalf.

Both Tanner and Myers expressed that the mother and father made very little progress throughout the course of the case. Myers testified that neither parent progressed beyond fully supervised visits with the children. Myers also noted HHS had concerns about the mother's mental health. The record shows the mother underwent a psychological evaluation in August 2023 and was diagnosed with bipolar disorder, general anxiety disorder, stimulant use disorder, and post-traumatic stress disorder. Myers acknowledged the mother did participate in medication management for her mental health, but she testified the mother never

participated in recommended therapy. Myers stated she believed the children could not be returned to the care of either parent at this time.

The juvenile court subsequently issued its termination order in September 2024 terminating the mother's and father's parental rights pursuant to Iowa Code section 232.116(1)(h) and (f). The mother and father now separately appeal.

## II. Standard of Review

"In termination-of-parental-rights cases, we review the proceedings de novo." *In re M.W.*, 876 N.W.2d 212, 219 (Iowa 2016). "There must be clear and convincing evidence of the grounds for termination of parental rights." *Id.*

## III. Analysis

We use a three-step analysis in reviewing the juvenile court's termination of parental rights. *In re P.L.*, 778 N.W.2d 33, 39 (Iowa 2010). We analyze whether (1) a statutory ground for termination has been established; (2) whether termination is in the children's best interest; and (3) whether any permissive exceptions should be applied to preclude termination. *In re A.B.*, 957 N.W.2d 280, 294 (Iowa 2021).

With this framework in mind, we address the mother's and father's appeals separately.

**A. Mother's Appeal**

*1. Statutory Grounds[2]*

The mother's parental rights for N.F. were terminated under Iowa Code section 232.116(1)(f). This section provides that a parent's parental rights may be terminated if:

> The court finds that all of the following have occurred:
> (1) The child is four years of age or older.
> (2) The child has been adjudicated a child in need of assistance pursuant to section 232.96.
> (3) The child been removed from the physical custody of the child's parents for at least twelve of the last eighteen months, or for the last twelve consecutive months and any trial period at home has been less than thirty days.
> (4) There is clear and convincing evidence that at the present time the child cannot be returned to the custody of the child's parents as provided in section 232.102.

*Id.*

The mother's parental rights for E.F. were terminated pursuant to paragraph (h), which provides that the juvenile court may terminate parental rights if:

> The court finds that all of the following have occurred:
> (1) The child is three years of age or younger.
> (2) The child has been adjudicated a child in need of assistance pursuant to section 232.96.
> (3) The child has been removed from the physical custody of the child's parents for at least six months of the last twelve months, or for the

---

[2] The State contends neither the mother nor the father preserved error on their statutory-grounds arguments. With the mother's argument, the State asserts she does not challenge the statutory grounds for terminating her parental rights to N.F. under section 232.116(1)(f). We believe the State overlooks that the mother's petition explicitly references paragraph (f) and provides argument as to why the elements of this paragraph were not met. Regardless, a failure to cite legal authority and advance an argument on an issue does not implicate our error preservation doctrine. Instead, it raises an issue of waiver. *See Baker v. City of Iowa City*, 750 N.W.2d 93, 102 (Iowa 2008) (noting failure to advance an argument and cite legal authority in support of the argument may be deemed waiver of the issue). We address whether the father waived his statutory grounds argument below.

> last six consecutive months and any trial period at home has been less than thirty days.
>        (4) There is clear and convincing evidence that the child cannot be returned to the custody of the child's parents as provided in section 232.102 at the present time.

*Id.* § 232.116(1)(h). On appeal, the mother only challenges the fourth element of the two statutory grounds for termination—that the children cannot be returned to her custody at the present time. She argues she was never "viewed as a danger to her daughters." To bolster this argument, she notes "[t]here were no indicators that [she] was under the influence during a visit." She also points out "[t]here were no accusations of violent behavior." Thus, she seems to believe the children can be returned to her custody. We disagree.

Our supreme court has previously interpreted "present time"—as used in section 232.116(1)(f) and (h)—to mean "at the time of the termination hearing." *In re A.S.*, 906 N.W.2d 467, 473 (Iowa 2018). At the time of the termination hearing, the mother had a long and extensive history of substance-use issues. And chronic substance issues render a parent unable to safely and effectively care for children. *See In re A.B.*, 815 N.W.2d 764, 776 (Iowa 2012) ("We have long recognized that an unresolved, severe, and chronic drug addiction can render a parent unfit to raise children.").

And although the mother reported to HHS that she had been sober since January 2024, the record belies this claim. She tested positive for methamphetamine on February 28, 2024. Additionally, she tested positive for marijuana as recently as March 28, 2024. And while the record discloses she may have received a medical marijuana card, this in no way means she is sober. Regardless, a parent's short period of sobriety prior to a termination trial is not

sufficient to demonstrate that the children are able to safely return to their care. *See In re R.M.-V.*, No. 24-0924, 2024 WL 3688598, at *3 (Iowa Ct. App. Aug. 7, 2024) ("The short period of sobriety preceding termination does not demonstrate the mother's ability to immediately resume custody of her child.").

Further, the mother's history with substance use was not the only concern precluding the children from being returned to her custody at the time of the termination trial. There were also concerns over her mental health. While the mother did take some steps to address her mental health, such as medication management, she failed to comply with HHS's recommendation of therapy. We find the mother's lack of commitment to addressing her mental health also supports the conclusion the children could not have been returned to her custody at the time of the termination hearing. *See In re N.G.*, No. 23-0097, 2023 WL 2669845, at *3 (Iowa Ct. App. Mar. 29, 2023) (finding a mother's minimal progress in addressing her mental health precluded the child from being returned to her at the time of termination).

Accordingly, we find the evidence is clear and convincing that the children could not be returned to the mother's custody at the time of the termination hearing. Thus, the statutory grounds for termination under section 232.116(1)(f) and (h) were established.

*2. Bests Interests*

After finding the statutory grounds for termination have been met, we ordinarily move on to the second step and consider whether termination is in the children's best interest. However, the mother does not put forward an argument regarding the children's best interests. Accordingly, we decline to analyze this

step. *See In re J.M.*, No. 23-0907, 2023 WL 5607120, at *3 (Iowa Ct. App. Aug. 30, 2023) ("[I]n instances where the parent does not raise a claim relating to one of the three steps, we limit our review to the claims presented.").

*3. Permissive Exception*

In her final argument, the mother asserts the juvenile court erred by not applying a permissive exception to termination. She contends the exception to termination provided by Iowa Code section 232.116(3)(c) should have been applied due to the children's close bond with her. Section 232.116(3)(c) provides the juvenile court may decline to terminate a parent's parental rights if "[t]here is clear and convincing evidence that termination would be detrimental to the child at the time due to the closeness of the parent-child relationship."

We decline to reach the merits of this argument because the mother has not preserved error on this claim. We reach this conclusion because the mother never raised the issue of a permissive exception with the juvenile court. *See In re E.W.*, No.22-0647, 2022 WL 2347196, at *3 (Iowa Ct. App. June 29, 2022) (finding father did not preserve error on his claim regarding the applicability of an exception to termination because he did not raise the issue in the juvenile court). And although the State does not contest preservation on this issue, we have an independent duty to assess whether error was preserved. *See Top of Iowa Coop v. Sime Farms, Inc.*, 608 N.W.2d 454, 470 (Iowa 2000) ("In view of the range of interests protected by our error preservation rules, this court will consider on

appeal whether error was preserved despite the opposing party's omission in not raising this issue at trial or on appeal.").[3]

We affirm the termination of the mother's parental rights.

## B. Father's Appeal

### 1. Statutory Grounds

In his first argument on appeal, the father only argues the State did not establish the statutory grounds for termination under Iowa Code section 232.116(1)(h). He contends "the Court should enter an order finding that the State of Iowa failed to meet their burden to show by clear and convincing evidence that the conditions of Iowa Code section 232.116(1)(h) were met and deny the State's request to terminate." The father does not specify which elements under paragraph (h) he believes were not established. It is worth highlighting that only his parental rights for E.F. were terminated under paragraph (h).

We find the father has waived this cursory argument on appeal. *See In re A.V.*, No. 23-1916, 2024 WL 1757554, at *5 (Iowa Ct. App. Apr. 24, 2024) ("Without developing how the facts in this record support [his] position or citing legal authority, we find that this argument is waived" (alteration in original)).[4]

---

[3] The mother argues that she should be granted an additional six months to work toward reunification. But because she never raised the issue of a six-month extension in the juvenile court, we find she has not preserved this claim for appeal. *See State v. Ruttledge*, 600 N.W.2d 324, 325 (Iowa 1999) ("Nothing is more basic in the law of appeal and error than the axiom that a party cannot sing a song to us that was not first sung in the trial court.").

[4] To the extent the father may have intended to argue that the statutory grounds for termination of his parental rights for N.F. were not established under section 232.116(1)(f), we find this argument was waived by not advancing it on appeal. *See Baker*, 750 N.W.2d at 102.

*2. Best Interest*

Like the mother, the father does not make an argument that termination of his parental rights is not in the best interests of the children. Accordingly, we decline to conduct an analysis under this step of our termination framework. *See J.M.*, 2023 WL 5607120, at *3.

*3. Permissive Exception*

Moving on, the father argues the juvenile court should have applied a permissive exception to termination. Specifically, he argues the permissive exception to termination under Iowa Code section 232.116(3)(c) should have been applied by the juvenile court due to his close bond with the children. As discussed earlier, this exception permits the juvenile court to decline to terminate a parent's parental rights if the evidence is clear and convincing termination would be detrimental to a child due to the closeness of the bond the child has with the parent. *See* Iowa Code § 232.116(3)(c).

However, we decline to consider the merits of this claim because the father never raised this issue in the juvenile court. Thus, he has not preserved error on this claim. *See E.W.*, 2022 WL 2347196, at *3. We acknowledge the State does not contest error preservation on this issue, but we have a duty to assess whether error was preserved *sua sponte*. *See Top of Iowa Coop*, 608 N.W.2d at 470.[5]

We affirm the termination of the father's parental rights.

---

[5] The father asserts in passing he should be granted an additional six months to work toward reunification. He requested a six-month extension during the termination trial. However, he cites no legal authority and provides no facts from the record to support this argument in his petition. Accordingly, we find this argument is waived. *See Baker*, 750 N.W.2d at 102.

**IV. Conclusion**

To summarize, we affirm on both appeals. With the mother's appeal, we find (1) the State established by clear and convincing evidence the statutory grounds for termination and (2) she did not preserve error on her claim that the juvenile court should have applied a permissive exception to termination. With the father's appeal, we find that (1) he waived his challenges to the statutory grounds for termination and (2) he did not preserve error on his claim that the juvenile court should have applied a permissive exception to termination.

**AFFIRMED ON BOTH APPEALS.**